IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 8, 2020

**KADARICK LUCAS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 17-05070, C1708766   J. Robert Carter, Jr., Judge**

_____

**No. W2019-01635-CCA-R3-PC**
_____

The Petitioner, Kadarick Lucas, pleaded guilty to two counts of aggravated robbery, and he received an eight-year effective sentence.  The Petitioner then filed a petition for post-conviction relief, contending that he received ineffective assistance of counsel and that he did not plead guilty freely and voluntarily.  Following a hearing, the post-conviction court denied the petition, and the Petitioner appeals.  After a review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and J. ROSS DYER, JJ., joined.

Chelsea Rainey, Memphis, Tennessee, for the appellant, Kadarick Lucas.

Herbert H. Slatery III, Attorney General and Reporter; Katharine K. Decker, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Regina Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS AND PROCEDURAL HISTORY**

**Guilty Plea**

At the plea colloquy, the Petitioner stipulated that he was walking with the victims, Torell Howell and Steven Groggans[1], in Shelby County, TN, when he directed

_____

[1] The victim's name is also spelled "Goggans" in his witness statement dated July 26, 2016, entered as an exhibit at the post-conviction relief hearing.

them behind a residence. The Petitioner pulled out a revolver, fired a shot in the air, and pointed the gun at the victims as he demanded they give him their cell phones, belts, $60 in cash, and a gold chain. A Shelby County grand jury indicted the Petitioner on two counts of aggravated robbery. The Petitioner subsequently pleaded guilty to both counts. He agreed to serve concurrent sentences of eight years for each count.

Trial counsel informed the trial court at the colloquy that he would be more comfortable going forward with the Petitioner's mother present because she could not be there and the Petitioner was seventeen years old. Trial counsel had previously obtained a one-week continuance to allow the Petitioner the opportunity to speak with his mother. Trial counsel preferred that the Petitioner not plead guilty that day both because the Petitioner had not spoken to his mother in person and because the Petitioner would shortly turn eighteen, which could affect his housing in prison. Upon questioning by the trial court, the Petitioner indicated that he wanted to plead guilty that day despite the court's willingness to continue the matter until his eighteenth birthday had passed. The Petitioner insisted that he was ready to plead guilty. He was comfortable making the decision at that time even though he would be an adult in a couple of weeks, and he knew he was being convicted as an adult.

The Petitioner had a tenth-grade education. He could not talk to his mother in person prior to pleading guilty because of a conflict in his mother's schedule, but he did talk to her over the telephone. Before the colloquy, trial counsel explained to the Petitioner the rights he was waiving by entering a guilty plea. The Petitioner signed the waiver form and testified that he understood the State's burden to present evidence against him and his rights to have a jury trial, confront witnesses presented at that trial, to testify, to refrain from testifying, and to appeal his case with appointed counsel. The Petitioner also understood that he would not have a jury trial and would not be able to appeal his case if he pleaded guilty. He affirmed that he wanted to plead guilty instead of having a jury decide his case.

The Petitioner testified that he understood that he was pleading guilty to two counts of aggravated robbery, that he would serve eight years, and that he would serve 85 percent of that sentence before release eligibility. The trial court marked on the judgment form that his sentence would be served at the "penal farm" in Shelby County, but the Petitioner understood that he could be sent somewhere else. He testified that he was entering into the plea agreement freely and voluntarily and that nobody threatened him or made him agree to the offer. He was also not on any medication at the colloquy, and he felt that he understood what he was doing.

The Petitioner testified that he talked to trial counsel about his decision to plead guilty. Trial counsel reviewed the facts of the case with him and answered all of his questions. He agreed that trial counsel had discussed the State's anticipated proof with him "on multiple occasions." The Petitioner wanted to get the case behind him, and he

did not have any further questions for the court before pleading guilty. The trial court found that the Petitioner entered into the plea freely and voluntarily and that he knowingly and intelligently waived his rights free from threats or coercion. The trial court then found the Petitioner guilty and imposed the agreed-upon sentence.

## Post-Conviction Proceedings

The Petitioner filed a timely post-conviction petition, claiming that he entered into his guilty plea involuntarily, that he received ineffective assistance of trial counsel, and "other grounds" not specified. After the post-conviction court appointed him counsel, the Petitioner filed an amended petition, asserting the same grounds for relief but omitting the "other grounds" identified in the first petition. The post-conviction court held a hearing, where the Petitioner and trial counsel testified.

The Petitioner testified that trial counsel represented him for about four or five months prior to the entry of the guilty plea. Trial counsel visited him in jail once. According to the Petitioner, trial counsel never reviewed discovery with him. The Petitioner explained that trial counsel instead only gave him discovery in court and communicated the State's offers to him. The Petitioner recalled that the first plea offer communicated to him was for ten years at 85 percent, but he explained that he ultimately received eight years at 85 percent. He testified that he did not enter into the latter plea agreement freely and voluntarily because he was young at the time and because trial counsel did not explain the plea agreement to him.

On cross-examination, the Petitioner admitted that he was only a few weeks away from his eighteenth birthday when he pleaded guilty. Before the Petitioner entered into the agreement, he was advised by trial counsel to discuss it with his mother. He talked to his mother over the telephone rather than in person. He recalled the trial court explaining his rights to him and agreed he understood his right to plead not guilty. However, the Petitioner maintained that trial counsel did not explain everything to him.

The Petitioner testified that he had the opportunity to review all the evidence but that trial counsel would not discuss the evidence with him and would only discuss the plea negotiations. He further testified that trial counsel did not go over his right to a jury trial but stated that the court did explain his right to not plead guilty. He testified that he did not understand his right to not plead guilty at the time he entered his plea, even though he told the court he did understand it. He was not under the influence of any medication when he pleaded guilty.

The post-conviction court then asked the Petitioner what he understood at the time of the post-conviction hearing that he did not understand when he pleaded guilty. The Petitioner responded that he did not understand his sentence or the evidence. Later, he testified that he presently had a better understanding of the facts of the case and the law.

3

He explained that he was improperly sentenced and that the victims' statements were inconsistent. He acknowledged that he received the minimum sentence but maintained that he still wanted to have a trial.

On redirect examination, the Petitioner testified that he learned in preparation for the post-conviction hearing of more than eight inconsistent statements made by the victims in the underlying case. The victims' statements were introduced as an exhibit during the post-conviction relief hearing. The statements indicated that the Petitioner and an individual named "Corey" robbed the victims. The Petitioner testified in detail about three of the alleged inconsistencies contained in the statements. First, the Petitioner explained that one victim stated the robbery occurred at five o'clock, while the other victim stated it occurred between twelve and three o'clock. Second, the Petitioner noticed that the victims alleged the robbery occurred at different locations. Third, the victims described the guns utilized in the robbery differently. Mr. Howell stated that the Petitioner used a black revolver and Corey used a silver gun. Mr. Groggans stated that "[o]ne of them had a revolver and the other had a silver and black pistol."

On recross-examination, the Petitioner admitted that he obtained the victims' statements before pleading guilty and that he was present at a juvenile court hearing where they both testified. He maintained that trial counsel did not review the inconsistencies with him and that he did not know they existed prior to pleading guilty.

Trial counsel testified that he had practiced law since 1994, and he had previously represented juvenile defendants. He gave discovery to the Petitioner on February 6, 2018. He would review discovery with a juvenile client more carefully than others, and he would make sure they understood it. Trial counsel did not recall specifically reviewing discovery with the Petitioner, but he visited the Petitioner once in jail and met with him several times for court dates. Trial counsel also communicated with the Petitioner's mother. He was certain he would have reviewed discovery with the Petitioner. Trial counsel explained he would have reviewed discovery "more in depth" had the case been set for trial. However, he attempted to negotiate a plea deal because the Petitioner was "adamant about getting rid of his case." A competency evaluation indicated the Petitioner was competent, but trial counsel thought he probably had some "learning issues."

Trial counsel testified that he was sure he discussed the facts with the Petitioner. He informed the Petitioner that the sentences could be consecutive. Trial counsel stated that the Petitioner decided to accept the State's offer of eight years. He went over the Petitioner's rights with him, as did the trial court at the plea colloquy. He was concerned about the Petitioner's age and asked for a continuance for him to talk with his mother. However, trial counsel stated that he felt comfortable that the Petitioner understood everything. He stated that he would have answered all of the Petitioner's questions about

the case and would not have gone forward if he had felt that the Petitioner was not competent. The Petitioner was not hesitant about pleading guilty.

On cross-examination, trial counsel explained that he visited the Petitioner once in jail and "numerous times . . . when he had court." He could not recall specifically reviewing discovery with the Petitioner, but he explained it would have been his practice to do so. Trial counsel recalled giving the Petitioner copies of the discovery file within thirty days of being appointed to represent him.

Trial counsel testified that he did not know if he specifically discussed with the Petitioner the inconsistencies in the victims' statements. He noted that the inconsistencies would be relevant to the jury's evaluation of the facts and that the Petitioner did not want a jury trial. He testified that the Petitioner consistently stated that he did not want to go to trial. He believed the Petitioner understood what he was agreeing to, and trial counsel would have not gone forward if he felt that the Petitioner did not understand.

In its order denying post-conviction relief, the post-conviction court found that the Petitioner did not dispute the testimony from the colloquy that took place prior to pleading guilty. After pleading guilty, the Petitioner further reviewed the evidence in the case and decided he wanted a trial because he found what he believed were inconsistencies in victims' statements. The court found that trial counsel obtained discovery and gave it to the Petitioner. Trial counsel also discussed the case on several occasions, including during the one visit to the jail where the Petitioner was incarcerated. Trial counsel stated that the Petitioner wanted to plead guilty and did plead guilty after discussing it with his mother. Trial counsel convinced the State to agree to the minimum sentence for the offenses, and trial counsel felt comfortable the Petitioner entered the plea knowingly and voluntarily.

The post-conviction court denied his petition, concluding that he received effective assistance of counsel and that he knowingly and voluntarily pleaded guilty. The post-conviction court found that trial counsel provided discovery to the Petitioner, discussed the case with him on several occasions, and informed him of the available options. The post-conviction court also found that the Petitioner entered his guilty plea knowingly, intelligently, and voluntarily. The Petitioner filed a timely notice of appeal. We proceed to consider his claims.

## ANALYSIS

The Petitioner contends that the post-conviction court erred in denying his petition because he received ineffective assistance of counsel and his guilty plea was not knowing and voluntary. A petitioner may request post-conviction relief by asserting grounds alleging that his "conviction or sentence is void or voidable because" it abridged his

constitutional rights provided by the Tennessee or the United States constitutions. T.C.A. § 40-30-103. To obtain post-conviction relief, a petitioner must prove the allegations of fact made in the petition by clear and convincing evidence. T.C.A. § 40-30-110(f). The judgment of the post-conviction court may be appealed to this court. T.C.A. § 40-30-116. On appeal, the post-conviction court's findings of fact are conclusive unless the evidence preponderates against them. *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010). "[Q]uestions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge." *Fields v. State*, 40 S.W.3d 450, 456 (2001) (citing *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997)). Additionally, appellate courts may not "substitute their own inferences for those drawn by the trial court." *Id.* (citing *Henley*, 960 S.W.2d at 579). This court reviews "a post-conviction court's conclusions of law, decisions involving mixed questions of law and fact, and its application of law to its factual findings de novo without a presumption of correctness." *Whitehead v. State*, 402 S.W.3d 615, 621 (Tenn. 2013) (citations omitted). The issues of whether a guilty plea was knowing and voluntary and whether a petitioner received ineffective assistance of counsel are mixed questions of fact and law reviewed de novo on appeal. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).

## 1. Ineffective Assistance of Counsel

A criminal defendant has a right to the assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, section 9, of the Tennessee Constitution. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The right to assistance of counsel inherently guarantees that counsel's assistance is "effective." *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). To prove that counsel was ineffective, a petitioner must show that (1) his counsel performed deficiently and (2) such deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687-88.

To establish deficient performance, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. This standard requires a petitioner to demonstrate that the "services rendered or the advice given" were "'below the range of competence demanded of attorneys in criminal cases.'" *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). Counsel must have made errors so serious that counsel was not functioning as the "'counsel'" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Deficiency in the context of guilty pleas is measured in the same manner. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Measuring counsel's performance requires giving deference to counsel's decisions, and courts must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669. Accordingly, this court has held that a "petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably

6

based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). The reviewing court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland* 466 U.S. at 689). The "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Adequate preparation includes counsel's "duty to make reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary." *Burns*, 6 S.W.3d at 462 (quoting *Strickland*, 466 U.S. at 691). Counsel's decision to not investigate must be assessed by courts "for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.*

To demonstrate that a counsel's deficient performance prejudiced the defense in the context of a guilty plea, a petitioner must prove that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Because a petitioner must establish both deficiency and prejudice to prove ineffective assistance of counsel, a court need not address both prongs where the petitioner has failed to establish one of them. *See Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

In the present case, the Petitioner argues that the post-conviction court erred in finding that he received effective assistance of counsel. In support, the Petitioner first asserts that trial counsel failed to adequately prepare for his case and failed to explain the plea deal with him prior to pleading guilty. The Petitioner contends that trial counsel failed to review discovery with him that would have revealed inconsistencies in the victims' statements. Petitioner additionally contends that trial counsel informed him of the plea offer but did not explain it to him. Second, the Petitioner asserts that prejudice exists because he would have gone to trial if he had known about the inconsistencies contained in the discovery file. He contends that he "never knew the viability of success at trial." Had trial counsel explained the discovery to the Petitioner, he argues, he would have likely decided to go to trial instead. We disagree with the Petitioner that trial counsel's performance was deficient, and we decline to address his claim as it relates to prejudice.

The Petitioner has not shown that trial counsel performed deficiently in assisting him with his guilty plea. The post-conviction court found that trial counsel provided discovery to the Petitioner, discussed the case with him on several occasions, and informed him of the available options. At the plea colloquy, the Petitioner testified that

7

he discussed the facts of the case with trial counsel. The Petitioner further testified that trial counsel answered all of his questions sufficiently. At the post-conviction hearing, the Petitioner testified that trial counsel did not explain the facts contained in the discovery file to him. Particularly, he claimed that trial counsel did not inform him of inconsistencies in the victim's statements. Trial counsel testified that he was sure he discussed the facts of the case with the Petitioner. Although trial counsel did not recall specifically going over discovery, it would have been his practice to do so. Trial counsel further testified that the Petitioner was adamant about pleading guilty, even after reviewing the discovery. The post-conviction court's findings implicitly gave more weight to trial counsel's testimony than to the Petitioner's testimony. Absent evidence that preponderates against the post-conviction court's findings of fact, they are conclusive on appeal. *See Ward*, 315 S.W.3d at 465. Nothing in the record rebuts the strong presumption that trial counsel's performance was objectively reasonable. Accordingly, we conclude that the Petitioner is not entitled to relief on this ground.

### 2. Voluntariness of the Petitioner's Guilty Plea

Due process requires that a criminal defendant's guilty plea be "knowing and voluntary." *Johnson v. State*, 834 S.W.2d 922, 923 (Tenn. 1992) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)). A guilty plea comports with due process where it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Jaco*, 120 S.W.3d at 831 (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). In making this assessment, courts must consider circumstantial factors, including:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897 (Tenn. 1993). A reviewing court must consider the totality of the circumstances surrounding a petitioner's plea of guilty. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995).

The Petitioner argues that the post-conviction court erred in concluding that his guilty plea was entered into knowingly and voluntarily. As support, the Petitioner argues that his relative intelligence weighs against such a finding because he was seventeen years old at the time, had learning issues, and only had an eighth-grade education. Contrary to this assertion, the Petitioner testified at the plea colloquy that he had a tenth-grade education. He additionally cites his youth, limited knowledge of the law, and

limited experience with the criminal justice system for the proposition that he was not familiar with criminal proceedings. He contends that he pleaded guilty to get the case behind him instead of trying to avoid a harsher sentence. According to the Petitioner, trial counsel did not competently represent him, barely conferred with him about his case, and only told him about the State's plea offer.

The post-conviction court did not err in concluding that the Petitioner's plea was knowing and voluntary. At the time the Petitioner pleaded guilty, he was just a few weeks away from his eighteenth birthday and had obtained up to a tenth-grade education. Although trial counsel stated he thought the Petitioner had learning issues, a competency examination revealed that he was otherwise competent. The Petitioner was given additional time to talk to his mother about the decision before pleading guilty. Despite knowing the trial court would give him additional time to consider the decision due to his minority, the Petitioner insisted on pleading guilty that day and indicated he understood the case against him, the effect of his plea of guilty, and the rights he was waiving by pleading guilty. In terms of his familiarity with criminal proceedings, the State notes that one of the exhibits shows the Petitioner had been placed on probation as a juvenile for theft of a car but had no prior convictions. The Petitioner testified that he met with trial counsel on multiple occasions to discuss the facts of his case and the plea offer. The record reflects that the trial court also inquired extensively into the Petitioner's knowledge and voluntariness, confirming at various points during the colloquy that he was knowingly and voluntarily pleading guilty. He also told trial counsel and the court that he wanted to plead guilty to put the case behind him. He knew that he would receive the minimum sentence for his convictions and that exercising his right to a jury trial could result in a higher penalty. We conclude that the post-conviction court did not err in holding that the Petitioner pleaded guilty freely and voluntarily under the totality of the circumstances. Accordingly, the Petitioner is not entitled to relief on this ground.

## CONCLUSION

Based upon the foregoing reasons, we affirm the judgment of the post-conviction court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE